May it please the Court, my name is Stephen Engel and I have been appointed by the Court to represent Mr. Stephen Burrell on appeal. Mr. Burrell is a federal prisoner and he litigated the case below pro se. This is an unusual case. Mr. Burrell brought suit for three separate violations of his Fourth Amendment rights. The district court denied, granted summary judgment against him for three reasons. Now on appeal, the officers present three entirely different reasons. Counsel, help me with a couple of issues that are on my mind here. The first one is on the girlfriend's consent. The way I understood it, reading all the material in the excerpts, basically the police tell her, you let us search and we'll blame your boyfriend for whatever contraband we find, but if you don't let us search, we'll get a search warrant and we may blame you for the contraband we find. And I was thinking, that's a good deal. Who wouldn't consent to a search in those circumstances? Am I missing something there? Well, I think that's correct. I mean, part of the problem, as we also explained, is that the officers also told Ms. Johnson that the warrant was on the way. But there aren't magic words here that we're looking for, I don't think, anyway, under the cases. I think we're just looking to make an overall judgment in all the totality of the circumstances about whether it was consent freely given. Exactly. The question is whether there is a material factual dispute, whether under the circumstances Ms. Johnson consented. We submit for two reasons, among others, but the two that we pointed out in our briefs, that they told her, one, that the warrant was on the way when, in fact, they conceded that they did not have probable cause to search the apartment. And under the clearly established law in this circuit, Urahae v. INS, as well as the Supreme Court's decision in Bumper v. North Carolina, when the police suggest that getting a warrant would be a foregone conclusion, then consent is nothing more than acquiescence to lawful authority. And so under those circumstances, the police do not procure valid consent. And the second circumstance that we submit is the threat is, as you say, the threat that if she did not cooperate, they might arrest her. And perhaps I agree, Your Honor, standing alone, that may or may not initiate her consent, but this Court has recognized in Oakletree that the threat of arrest, that we will arrest you unless you consent to permit the search, is a factor that can vitiate the voluntariness of the consent. Well, now, she – there's testimony, obviously, that she consented. And isn't there a written consent as well? There is. She did sign a consent form. And then she – does she give grand jury testimony, too? She did give grand jury testimony. And she doesn't mention anything about coercive there. And then – so the first mention of coercive is in this affidavit that there's some complaint about that it's not notarized or whatever. And so what do we do – you know, what does she have to – it seems to me the affidavit is sort of conclusory, and then there's other statements for the standard of this case. Does she have to do anything, or can she just say that and then create a genuine issue? Sure. Well, I think actually the affidavit is not – I disagree with the characterization that it's conclusory. She states that the officers told her that the warrant was on the way. That's a factual assertion. And she states that the officers told her she did not cooperate. They would – then they would arrest her if they found any contraband. But neither – she also says that she believes she was coerced. But it's not the conclusory aspect of that affidavit that we're relying upon. It's the statement that the warrant was on the way. And referring to the grand jury testimony, which, again, is an ex parte proceeding. Mr. Burrell was – had no representation there. The questions that were answered were only the questions that the prosecutor asked. She makes reference to the fact that when the officers came to the apartment, they said that they were waiting for a warrant. So we submit that the grand jury testimony is actually entirely consistent with the affidavit that she later supplied. And as to the question – It looks to me as though she doesn't consent because she figures resistance is futile. She consents – she says why she consents in paragraph 8 of her declaration. She says, out of concern of being arrested if the officers did, in fact, find contraband during the search. And so what it looks like is she has made an intelligent judgment to allow them to search because – I read you from 8, paragraph 8. Paragraph 7 says, if she lets them search, they'll blame it on her boyfriend. That's the part that gets me away from the resistance is futile idea in the case that you cite about warrant on the way. Well, if you note also in that passage in section 8, she says, after the warrant arrived. So she agreed. She said because they're going to have a warrant, there really was no choice at all. She could either wait and insist on that the officers show her the warrant, and then she ran the risk of getting arrested. But the officers had told her that the warrant was on the way. So I think that's sort of a critical fact in her consent. Why not allow the search as long as they're going to blame her boyfriend for what they find? Well, I suppose that could be. I guess if the officers – if she did not believe that the officers were getting a warrant, if, as Detective Rector conceded in Detective McElroy, that they did not have probable cause to search the 1500 Karen apartment, if she were aware of that, she might well have not consented. There's no evidence that she was looking to assist the police in arresting her boyfriend. Certainly she said she was afraid that she would be arrested if they proceeded to search when the warrant arrived. But, again, I think it's a critical fact. Let me ask you about something else now. Sure. Did the police have probable cause right from the get-go to think that the appellant had shot somebody? That he had shot somebody. Well, actually, he was arrested for shooting someone in December. This was an incident that's referred to in the briefs. In a December incident, Mr. Burrell accidentally, he said, but he shot a woman in December, at which point he was arrested and he was charged not only with the battery. Oh, I get it. It's a different time altogether. I think that's right, although it's important, though. It is a different time because the district court confused this in his order. In December – the district court relied upon this earlier December incident in suggesting that the police circumstances – that the police action was reasonable under the circumstances. Well, there was plenty of evidence that, whether you agree with it or not, that he – well, I mean, he said it was accidental, but that there had been that shooting incident with his girlfriend and also that he had been – I mean, this whole thing involved firearms and drugs, too, right? So I find it hard to believe that a person wouldn't be concerned about him having a gun, having that information. Oh, well, I guess I – I'm not sure to what extent he was arrested. Well, I mean, the initial contact, they kind of – they don't take any chances when they remove him, I guess, at that point, right? Well, we're not charging excessive force based on the initial contact. We are – we do claim in the reply that it was clear that the officers did arrest him at the time. But what about – isn't there evidence that he said – when they told him that, you know, we've got a search warrant for your place, he said, I'm not going to let you in, but I want to be there. I want to be there and that, you know, that he voluntarily went over there at that point. I mean, Mr. Burrell has expressly said that he did not – he did not consent to being taken from the parking lot and brought to – brought back to his apartment on 1750 Cairn. So we would suggest that that is a material factual dispute to the extent that it's relevant. But I think the important fact, of course, is Mr. Burrell had been arrested at that time. I mean, he had been taken down. He was in handcuffs when he was speaking with the officers. So to the extent that the question is whether he wanted to serve out his detention on the street corner or whether he was – he agreed to let the officers take him back to his apartment, I don't think that, you know, by any stretch of the imagination, this became a consensual encounter with the police. Well, let me ask you this, Bea, since your time's running out. I think there's arguments raised about federal rule of criminal procedure 41D. Yes. And I'm wondering the fact that that – is that rule properly – is that rule being properly raised here when it wasn't raised in front of the district court? Oh, it was. He did raise that. He cited U.S. v. Gantt, which is a 41D case. So we believe it's preserved. We also think the 41D issue is to some extent indistinguishable from the Fourth Amendment issue, which this court in Marx v. Clark and U.S. v. McGrew pretty clearly, I think, dealt with. And then most recently, the Supreme Court endorsed this court's line of reasoning in Grew v. Ramirez. So, you know, I think whether it's a 41D separately or whether it's part of the Fourth Amendment issue, we believe it is before the court. But if I may reserve the balance of my time for rebuttal. Thank you. May it please the Court. My name is Peter Angulo, and it's my pleasure to represent the officers in this appeal before the Court today, in particular, Officers McElroy and Rector. Officer Thorpe, whose name is in the appellant or an appellee in this case, is not being pursued on the appeal, and so his issues are not involved. There are, Your Honor, three separate events under consideration. Well, Mr. Angulo seems to have you as somewhat of a moving target from the standpoint that you've taken a whole new approach here on this appeal than what the district court did. I appreciate that's the position they've argued, Your Honor. I would respectfully disagree. The arguments that we put forth in the brief were the arguments that were raised in the motion for summary judgment. In particular, the issue of qualified immunity, the judge himself specifically held that because he did not find a Fourth Amendment violation based on the activities of the officers, he didn't need to go so far as to address the issue of qualified immunity. However, because this is a de novo review by this Court, certainly those arguments can be raised again as an additional argument to support the actions of the officers in this case. There are three points of consideration. The first is the detention of Mr. Burrell. The second is the search of the 1500 East Cairn apartment. And the third is the search of the 1750 East Cairn. Let me sort out a couple of things to clarify things in my own mind. If they arrested him, if it seemed to be an arrest, was there probable cause? And if so, what was it? Well, at the point that he was actually arrested, he was in fact – there was probable cause for the arrest. They had found drugs in his home. They had found weapons in his home over which he had – over two apartments over which he had exclusive control or virtually exclusive control. If they found the contraband, did they have probable cause? They certainly had probable cause to detain him on the grounds that they believed that there was – that he was in possession of a firearm and engaging the trafficker. You didn't answer my question. I was going to ask you about the Terry stop and about the detention during the search afterwards. But first I want to find out, was there probable cause to arrest him before they found the contraband? Your Honor, I would submit to the Court that there is not probable cause. Okay. Now, you need reasonable suspicion for a Terry stop. When did they have reasonable suspicion and what furnished it? The reasonable suspicion that the officer – the officer director had was the information that was found in the application for the search warrant, that this gentleman was an ex-felon, that based on their surveillance, they believed that there was drug trafficking going on inside that apartment and that he was, in fact, in possession of firearms and may, in fact, have had them on his person at the time. Did the officer articulate that? Or was it articulable by the officer? It was, by Detective Rector. He was involved in the surveillance and was aware of the same facts as Officer McElroy. And in addition, he had also read the application for search warrant and so was, under the fellow officer rule, that knowledge would have been imputed to him in making the stop. So what we should do is treat it as a Terry stop when they first apprehend him because of the reasonable suspicion that's in the affidavit supporting the warrant and it matures into an arrest once they find the contraband. It matures into arrest to the point that he's placed under arrest by the officer – by Officer McElroy. At the time Detective Rector has control of him, he does not ever place him under arrest. In fact, the evidence before the court – When was it that he was placed under arrest? It was after he was back at the home. I believe it was at the conclusion of the search when they found the drugs inside the home. Was they after finding the contraband? That's correct. So what was he doing with him when he took him from the place where he stopped him over to the house? Well, he was – the evidence before the court is clear that, according to Detective Rector, what he did was he – as he made the Terry stop and they spoke, he informed him that they were, in fact, going to be searching the home and that Mr. Burrell requested that he be present at the home while that search was being conducted and that he consented to that. That argument, although Mr. Engle says to this court that that's a dispute of fact, well, there isn't any evidence in the record before this court where Mr. Burrell ever denied that. There's no affidavit. There's no statement before the grand jury or – where he denies that this was a consensual encounter, a consensual taking back to the 1700 address, that he – that he agreed that he wanted to go back, that he requested that opportunity. He could have been, I suppose, detained there at the site. Was he in handcuffs? I believe he was initially handcuffed and I believe he was transported in handcuffs, but I – the record's not clear on that fact and I couldn't tell the court with authority whether that was true. I know that upon the initial contact with him – Do you want to go back while we search your place? It's my understanding that Detective Rector has testified that that's exactly what he said, that he said to them, we have a search warrant that's coming for your home, your apartment. We'd like you to be there. He said, I'd like to be there, and he went ahead and voluntarily consented to go back with Detective Rector. And while he may disagree with it in the brief that he's filed with this court, there's no evidence – there's no evidence presented to Judge Dawson where Mr. Burrell said that wasn't true, whether in affidavit form, whether in deposition form, or in any kind of testimony from the court. This Court has held that even the use of a weapon or putting someone in handcuffs does not transform a detention into an arrest. The question is, what is the action of the officer in making that original contact and then whether or not at some point it matures into an arrest? And here the evidence is that it does not mature into an arrest until, in fact, the contraband is located and probable cause, based on the other information they had, exists for an arrest. I think what we said in that case was it need not be characterized as an arrest just because handcuffs have put on – have been put on. I don't think we said categorically that handcuffs never turn into an arrest. It just depends on the circumstances. That's correct. And in this – It's been an arrest here. Because in this – in this context, it's originally simply a detention of the individual. An inquiry is made whether he'd like to be present when his home is being searched. He does want to be present when that's going forward. Is there any indication that he would be free to go if they didn't find contraband? There's nothing in the record that indicates that one way or the other, Your Honor. Those questions weren't asked. Those issues were not raised. Detective Rector simply testified that in his initial contact with him, as he talked about the search, that he expressed a desire to be present at the time of the search, that he expressed a willingness to go along and to cooperate and be present when that search was being taken place. Is there anywhere in the record that they're afraid that he's going to show back up at the house while they're searching and be any sort of threat at that point? Is that – is there anything like that in the record? There is – to my knowledge of the record, there's nothing that's specific to that point, Your Honor. I think it's a legitimate conclusion to draw, but unfortunately there isn't anything that would support that concern by the officers. The second issue is the consensual search at the 1500 Cairn address. And here the issue is we have signed consent by the individual who's in the apartment. She testifies at the grand jury proceeding and says basically her attitude to the officers was, sure, come on in. I don't have anything in here of any concern to me. There shouldn't be anything like that in this – in this – no drugs, no weapons in this home. If there is, it's not mine. You're welcome to come in and do so. It's a summary judgment, so I think we have to take an act today that a declaration under penalty of perjury is cognizable evidence to set up a genuine issue, don't we? Well, Your Honor, if in fact that was the only evidence before the Court, that might be true, that at least would be a consideration. If it was in the proper format, this is not an affidavit. It is a declaration. What is the problem with it? If it were merely an unsworn affidavit, then I would agree with you it's not cognizable. But it says at the end of it here that she declares under penalty of perjury. The primary problem with it, Your Honor, is that it is, as I read it, conclusory in its – in its format. Furthermore, the – What words are too conclusory? I'm looking at paragraphs 6, 7, and 8 as the critical ones here. And they look to me like – well, I don't get what's conclusory. It looks like she just says the police told her that a search warrant was on the way. They wanted to search before it came. They told her that if they weren't allowed to search, then she would also get in trouble if they found contraband. She allowed them a search out of concern of being arrested if they did, in fact, find contraband after the warrant arrived. The – the conclusory nature of it, Your Honor, goes to the language that's used by the officer, which officer is engaging in that communication with her, the context that would cause it to be coercive, because that's really the argument. The statements that are being made. I mean, I won't remember when I get into the conference room which lawyer said what to me. I'll have to look at my notes. I appreciate that, Your Honor. But that's part of the problem of the statement, is it's not specific to these particular officers, because they're the ones that are named. This isn't a lawsuit against the Nevada Department of Investigations or against the Las Vegas Metropolitan Police Department in general. It's against these specific officers. And there's a requirement then – In paragraph 7, she hangs it on Detective Rector, that particular statement. If you don't let us search before the warrant arrives, you'll get in trouble, too, if we find contraband. And she says it's Rector who told her that a warrant was on the way in paragraph 6. Again, Your Honor, the problem that I had with the affidavit – The part where she refers to the officers generally is she says she had a concern of being arrested if the officers did in fact find contraband. But it seems to be that she's saying if Rector told me these things, there was more than one policeman. If any of them found dope or other contraband, I figured I could get in trouble. I see my time has expired. Does the Court allow me to answer that question? Thank you, Your Honor. Again, the problem with that affidavit is twofold. First, it goes against her grand jury testimony. Secondly, her statements other than – Well, are you saying, though, if – Okay, she's not obviously the defendant in this. Are you saying that if something goes against her grand jury testimony, then right there, it cannot create a tribal issue? What I was saying, Your Honor – I mean, is that as a matter of law there? I believe, Your Honor, that the Court's decision that we cited, I believe it was Kennedy. I think you're trying to squeeze it into Ratabanko, but that was different. That was a conclusory affidavit followed by a deposition that basically explained everything and showed that the affidavit wasn't so. The difference is, Your Honor, that I think – or I think the analogy is there, the argument is that the party can't take a sworn statement, then later give a – or even a witness, and then under circumstances which are not known – in other words, we don't know under which circumstances the declaration was done, whether she drafted it herself, drafted it by somebody else, or someone was physically present with her when they drafted it, whether she was under any sort of duress when that document was done. Well, those are all good arguments about why it might not be credible, but – But that document alone, then, in light of the statement that's given under oath, where she has a right to counsel, where she's informed she has a Fifth Amendment right not to answer any questions, where she has a judge presence. It's just impeachment. You're just giving a jury argument for believing one statement and not the other. No, Your Honor. Your Honor, what I would submit is in the context of a motion for summary judgment, that those kind of conflicting responses at best – Do you have a case for that? I do not, Your Honor. Your argument to me sounds like a really novel proposition, and summary judgment is something I've been handling a long time. I've just never heard this. So maybe I missed it. Tell me the case. Your Honor, the Ratobanco case, the argument that's contained in that, the policy behind that would apply, I believe, here. That a party cannot or a witness – For an extension to Ratobanco. Yes, Your Honor. Okay, now I get it. Okay. And last statement. Thank you, Your Honor. I would just like to briefly address this issue as to whether the initial stop was a Terry stop or probable cause. As we lay out – well, first of all, in the arrest report, Detective Rector states that he detained Mr. Burrell pending execution of the search warrant. There is no indication that this was a brief encounter that if Mr. Burrell wanted to go on his way, he could have gone on his way. Detective Rector also read him his Miranda rights at the time. And then third, the aggressive nature of the takedown is relevant to whether it's a stop or an arrest. As Washington v. Lambert recognizes, there are certain defined circumstances under which the officer may use handcuffs and may use a firearm to take down an individual, but these were not them. Mr. Burrell – there's no evidence Mr. Burrell was not cooperated – cooperative, no evidence that they had specific evidence that he was armed, and no evidence that he had, you know, recently been involved in any violent activity. In fact, this Court in Del Viso specifically held that just because an individual is a drug dealer, this will not standing alone justify the use of a firearm in a violent takedown. If the Court has no further questions, I see my time has expired. Thank you, Counsel. Thank you. Thank you.
judges: Oakes, Kleinfeld, Callahan